**COMMONWEALTH of Kentucky, Appellant,**

v.

**DO, INC., Appellee.**

Supreme Court of Kentucky.

July 5, 1984.

Rehearing Denied Sept. 13, 1984.

Fred M. Goldberg, Edward L. Schoenbaechler, Goldberg & Simpson, P.S.C., David L. Armstrong, Atty. Gen., J. Bruce Miller, County Atty., Stephen S. Johnson, Louisville, for appellant.

Edwin Cohen, Cohen & Cohen, Louisville, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals, which affirmed the dismissal of criminal charges filed against Do, Inc., by the Louisville and Jefferson County Department of Public Health. Do, Inc. was charged with violating provisions of the sanitary code which set up rules and regulations for the control of childhood lead poisoning through the regulation of the use of lead-based paints in dwelling units.

The crucial issue is whether the entry of the State into the field of lead-poisoning prevention pursuant to KRS 211.900 et seq., preempts local regulations and enforcement.

Do, Inc. successfully moved to dismiss the charges in district court on the grounds that under KRS 211.900, the Cabinet for Human Resources now has exclusive control over lead poisoning prevention throughout Kentucky. The majority decision of the Court of Appeals held that the General Assembly preempted the field of lead poisoning control by expressing a com-

prehensive state-wide public policy that does not require local action. The Court of Appeals opinion was based on *Boyle v. Campbell,* Ky., 450 S.W.2d 265, 268 (1970), in which a Bowling Green Sunday liquor closing law was invalidated as contrary to KRS 436.160 because the subject matter was fully covered by the state statute which expressed a state-wide public policy and by its terms indicated a paramount state concern on requiring local action.

This Court reverses the Court of Appeals because the legislation in question is very different from that in *Boyle, supra,* because it not only authorizes local action but encourages local programs. KRS 211.-901(4) expressly authorizes the state cabinet to provide financial and technical assistance to establish and maintain local programs. The doctrine of preemption is not applicable to this situation.

Pursuant to KRS 212.350 et seq., the Louisville and Jefferson County Board of Health has broad authority to promulgate rules and regulations concerning public health. *Louisville & Jefferson County Board of Health v. Haunz,* Ky., 451 S.W.2d 407 (1970).

▆▆▆ *Stephenson v. Louisville & Jefferson County Board of Health, et al.,* Ky., 389 S.W.2d 637 (1965), held that the Board of Health was a municipal corporation and a subdivision of the state. Consequently, the Board of Health in actions taken pursuant to its own regulations or the laws of other governmental units is actually exercising the police power of the state to protect the public health. The state, through the powers delegated by it to any of its political subdivisions, may require citizens to conform to its properly enacted regulations regarding public health. Such is the case in regard to the enforcement of local lead-poisoning control regulations as they relate to owners of rental property in Jefferson County.

▆▆▆ The constitutional objections asserted by Do, Inc., are unconvincing. In *Adams, Inc. v. Louisville & Jefferson County Board of Health,* Ky., 439 S.W.2d

586 (1969), it was held that there is no broader field of police power than that of public health. The constitutional limitation upon the exercise of the police power to regulate health is a matter of reasonableness. We are not convinced that the regulations here are in any way unreasonable. The mere presence of the state in a particular area of the law will not automatically eliminate local authority to regulate. Concurrent local regulation was held valid in *City of Ashland v. Ashland Supply Co.,* 255 Ky. 123, 7 S.W.2d 833 (1928), unless it is unreasonable and oppressive and it conflicts with state legislation.

In *Barnes v. Jacobsen,* Ky., 417 S.W.2d 224 (1967), county boards of health were permitted to adopt regulations not in conflict with the state board of health as an authorized delegation of the police power.

In *Boyle, supra,* this Court established a test for preemption similar to that set out in *In re Hubbard,* 62 Cal.2d 119, 41 Cal. Rptr. 393, 396 P.2d 809 (1964).

(1) The subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality. 41 Cal.Rptr. at 399, 396 P.2d at 815.

Applying this test to the lead-poisoning prevention and enforcement program, the General Assembly did not intend to exclusively occupy that area of regulations. The state statutes indicate a desire for local action in that area and transient citizens will be protected if in any way affected by the adoption of local law. It must be understood that there are many individual situations where local police power may operate on the same subject matter to supplement the general law by providing for

additional reasonable requirements. *Louisville & Jefferson County Board of Health v. Haunz*, Ky., 451 S.W.2d 407 (1970); *City of Ashland v. Ashland Supply Co., supra.*

In *City of Ashland v. Ashland Supply Co.*, a city regulation which was more restrictive than the state regulation concerning truck weight was upheld because it was reasonable and not oppressive. The court also found that the state had not attempted to cover the entire subject of weight limitations. In *Haunz, supra*, this Court permitted a local agency to carry out the policies and procedures of state government. 451 S.W.2d at 409. These Kentucky cases recognize the theory of concurrent authority in areas of transportation and public health.

■ The doctrine of preemption is often confused with the doctrine that provides that there should be no conflict between state and local regulation. Municipal regulation is not always precluded simply because the legislature has taken some action in regard to the same subject. For an extensive discussion of this question, *see Fireman's Insurance Co. of Washington, D.C. v. Washington*, 483 F.2d 1323, 1328–1329 (1973), and *Maryland and District of Columbia Rifle & Pistol Ass'n v. Washington*, 142 U.S.App.D.C. 375, 442 F.2d 123 (1971). The true test of concurrent authority is the absence of conflict. Here cooperative authority is extremely valuable and in the best interests of the public. The mere fact that the State has made certain regulations does not prohibit local government from establishing additional requirements as long as there is no conflict between them. *See* 56 Am.Jur.2d, *Municipal Corporations*, §§ 374 through 383.

A careful examination of the record and the regulations as compared to the statutes indicates that the local Board of Health has not adopted any regulation which conflicts with any statute in the individual fields sought to be controlled.

The record indicates that the Cabinet for Human Resources has annually reviewed and approved the health department's program for childhood lead poisoning preven-tion since 1974, and has reviewed and accepted annually the program-plan evaluation for the same program.

■ The Louisville and Jefferson County Board of Health is not preempted or otherwise prohibited from enforcing its lead poisoning regulations. The decision of the Court of Appeals is reversed.

AKER, GANT, VANCE and WINTER-SHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion, and STEPHENS, C.J., and STEPHENSON, J., join.

LEIBSON, Justice, dissenting.

Respectfully, I disagree with the decision upholding the Board of Health's power to enact the rule in question. The question is not whether the General Assembly preempted the field of lead poisoning control by enacting KRS 211.900–211.905 and 211.994. The question is whether the Louisville and Jefferson County Board of Health has the authority to enact a rule legislative rather than administrative in character. In my view it does not.

The Louisville and Jefferson County Board of Health is created pursuant to KRS 212.350 to perform the functions of a county department of health. KRS 212.370 defines its powers and duties, which are administrative rather than legislative in nature. KRS 212.240 specifies that the duties of county health departments is to administer and enforce, not to legislate. The Louisville and Jefferson County Board of Health is an *administrative agency* and has *no power* to legislate. *Henry v. Parrish*, 307 Ky. 559, 211 S.W.2d 418 (1948). Properly interpreted, the Board of Health's power to adopt rules and regulations is limited solely to enactment of regulations appropriate to carry out the legislative mandates of legislative bodies and regulations of the state's Cabinet for Human Resources. Otherwise interpreted it violates the doctrine of separation of powers.

The Kentucky Constitution, §§ 27 and 28 provides for "three distinct departments" of government, none of which "shall exercise any power properly belonging to either of the others."

In *LRC v. Brown*, Ky., 664 S.W.2d 907 (1984), we discussed the constitutional doctrine of separation of powers between legislative and administrative agencies, forbidding legislative encroachment into the power of the executive branch. Here we have the converse of that proposition, an administrative agency seeking to exercise legislative power.

The problem here is not that the state statute is so comprehensive as to preempt the field of lead poisoning control from the operation of local government, nor that the regulation by the Board of Health conflicts with the state statute (although there is a reasonable argument that it does). The problem here is that the rule in question was not enacted to carry out a state statute or regulation of the Cabinet for Human Resources, but to expand the law applicable to restricting the use of lead based substances. It is a local ordinance, legislative in character, adding a new and more restrictive rule.

For instance, it is one thing for the City of Louisville or the Jefferson County Fiscal Court, duly elected legislative bodies, to enact a lower speed limit in certain areas as a safety ordinance, and another thing for the local police department to do so. So too the Board of Health is simply the health officer for Jefferson County, not elected by the people to legislate, but selected by those who were so elected to carry out legislative policy. The Board of Health is empowered to enact regulations to carry out legislative power—state or local—but not to enact ordinances declaring illegal the activities of citizens that are otherwise lawful.

*City of Ashland v. Ashland Supply Co.*, 225 Ky. 123, 7 S.W.2d 833 (1928), cited in support of the authority of the Board of Health to legislate lead poisoning rules more restrictive than state statutes on the same subject, involved a local ordinance enacted by the city council where the state statute was not preemptive. It did not approve a local department of health exercising legislative authority. *Barnes v. Jacobsen*, Ky., 417 S.W.2d 224 (1967) is also distinguishable because it deals with the Board of Health's power to require permits to construct sewage disposal facilities, not with its power to legislate.

The state act on Lead Poisoning Prevention is directed to protecting children from ingesting poisonous lead paint. It provides standards and methods appropriate to accomplish this purpose. The Board of Health's rule differs from the state legislation in both scope and application. While it may not conflict with the state law, it does not provide for its enforcement, but instead addresses other unlegislated areas. If there is a problem here where local action is needed in addition to state action, and is appropriate, then those elected to legislate in the local area must provide a solution, not the Board of Health which has no authority to legislate regardless of its good intentions.

I would affirm the Court of Appeals and the trial court. The criminal charges filed against Do, Inc., should be dismissed because the Board of Health's regulation was beyond its authority.

STEPHENS, C.J., and STEPHENSON, J., join in this dissent.